**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

NEW ENGLAND CLEANING SOLUTIONS, LLC,

*Plaintiff*,

v.

MORGAN-KELLER, INC.,

*Defendant*.

Case No.: ______________________

# COMPLAINT

Plaintiff New England Cleaning Solutions, LLC ("NECS"), by its counsel, brings this Complaint against Defendant Morgan-Keller, Inc. ("MKI"), and states as follows:

## INTRODUCTION

1. This action arises from MKI's failure to pay NECS for final cleaning and related construction-cleaning services that NECS performed in connection with a construction project located in Smithfield, Virginia (the "Project").

2. On or about March 21, 2023, NECS and MKI entered into a written Subcontract Agreement, pursuant to which NECS agreed to furnish labor, materials, equipment, supervision, and services necessary to perform final-cleaning work for the Project. A true and correct copy of the Subcontract Agreement is attached as **Exhibit 1**.

3. That subcontract agreement, by its terms, is governed by Maryland law.

4. The original Subcontract Agreement price was $110,259.33, subject to any authorized additions, deductions, offsets, and changes permitted under the agreement.

5. NECS performed substantial cleaning work required under the Subcontract Agreement and also performed additional and corrective cleaning services at MKI's request, including work associated with Building 1, Building 4, the clubhouse, and the removal of paint spray from appliances, windows, and floors at the Project site.

6. MKI made only a partial progress payment and thereafter failed and refused to pay NECS the remaining amounts due for the labor and services NECS provided.

7. On September 13, 2024, NECS issued Invoice No. 2176 in the amount of $91,868.55 for unpaid contracted and additional cleaning services. The invoice provided Net 30 payment terms, which were due on October 13, 2024.

8. Despite NECS's performance, invoicing, and repeated demands for payment, MKI has not paid the outstanding balance.

9. In an effort to justify its nonpayment, MKI subsequently asserted purported backcharges and offsets more than eight months after payment became due.

10. Those backcharges and offsets are untimely, unsupported, excessive, and inconsistent with the Subcontract Agreement, including but not limited to, because MKI failed to provide the contractually required notice and meaningful opportunity to cure with respect to all of the work for which MKI seeks untimely backcharges.

11. MKI has retained the benefit of NECS's labor and cleaning services while withholding payment for those services based on those untimely after-the-fact backcharges.

12. As a direct and proximate result of MKI's conduct, NECS has suffered damages in an amount to be proven at trial of at least $91,868.55, together with prejudgment interest, attorneys' fees and costs where recoverable, and such other relief as the Court deems just and appropriate.

## PARTIES

13. New England Cleaning Solutions, LLC is a limited liability company organized under the laws of the State of Massachusetts with its principal place of business in Massachusetts. All of its members are Massachusetts residents.

14. Morgan-Keller, Inc. is a Maryland corporation with its principal place of business located at 70 Thomas Johnson Drive, Suite 200, Frederick, Maryland 21702.

15. At all relevant times, MKI acted as the general contractor for the Benn's Grant Apartment Homes project and retained NECS to perform final-cleaning and related services for the Project.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and NECS and MKI are citizens of different states.

17. Complete diversity exists because NECS and MKI corporations are citizens of different states.

18. Venue is proper here under 28 U.S.C. § 1391 because MKI resides in this district.

19. Venue is also proper pursuant to the parties' written Subcontract Agreement which provides that disputes arising out of or relating to the Agreement shall be brought in state or federal courts having jurisdiction in Frederick County. (*See* Ex. 1.)

## FACTS

20. On or about March 21, 2023, NECS and MKI entered into a written Subcontract Agreement, Contract No. 221014.133 (the "Subcontract"), under which NECS agreed to provide final-cleaning services for the Benn's Grant Apartment Homes project located at 100 Top Deck

Way, Smithfield, Virginia (the "Project").

21. MKI served as the contractor for the Project, and Benn's Grant Apartment Homes, LLC was identified as the Project owner.

22. The Subcontract established an original price of $110,259.33.

23. Under the Subcontract, NECS agreed to furnish the labor, materials, equipment, supervision, and services necessary to perform the final-cleaning scope assigned to NECS.

24. NECS mobilized its personnel and performed substantial cleaning work at the Project in accordance with MKI's scheduling, directions, and requests.

25. During the course of the Project, MKI requested that NECS perform additional—often repeat—services beyond the work for which NECS had previously billed.

26. Much of that beyond-the-scope work was required because MKI repeatedly demanded final cleaning while still working in adjacent areas of the building, which caused dust and dirt to spread into already-cleaned areas. This, of course, then required those areas to need to be cleaned again.

27. NECS explained to MKI that the re-cleaning was the result of MKI's mismanaged timing of work performed by various other subcontractors and requested that timing be adjusted so that areas would only need to be cleaned once; however, MKI did not take sufficient action to do that on more than one occasion.

28. Among other things, NECS performed additional cleaning services associated with Building 1, Building 4, the clubhouse, and the removal of paint spray from appliances, windows, and flooring.

29. On or about January 27, 2024, NECS performed an additional cleaning of Building 1 at MKI's request.

30. Between approximately February 10 and February 16, 2024, NECS returned to Building 1 and performed additional cleaning at the direction or request of MKI's project personnel.

31. NECS also performed additional cleaning at Building 4, cleaning at the clubhouse, and cleaning related to paint spray on appliances, windows, and flooring at the Project.

32. MKI accepted the benefit of NECS's labor and services at the Project.

33. On or about March 27, 2024, MKI made a payment of $34,619.40 in connection with NECS's work. Importantly, no backcharges were assessed with that payment.

34. MKI nevertheless failed to pay all amounts due in connection with NECS's work.

35. NECS continued performing contracted and additionally requested cleaning services following MKI's partial payment.

36. NECS completed its work at the Project in or about September 2024.

37. On September 13, 2024, NECS issued Invoice No. 2176 to MKI for unpaid contracted and additional cleaning services.

38. Invoice No. 2176 included the following charges:

a. $71,668.55 for construction cleanup;

b. $1,800.00 for clubhouse cleaning;

c. $3,000.00 for the January 27, 2024 cleaning of Building 1;

d. $6,600.00 for additional cleaning of Building 1 performed between approximately February 10 and February 16, 2024;

e. $5,200.00 for additional cleaning of Building 4; and

f. $3,600.00 for additional cleaning and the removal of paint spray from appliances, windows, and flooring.

39. The total amount stated in Invoice No. 2176 is $91,868.55.

40. Invoice No. 2176 provided Net 30 payment terms and became due on October 13, 2024.

41. MKI did not pay Invoice No. 2176 when due.

42. NECS thereafter repeatedly requested payment of the outstanding balance.

43. MKI failed and refused to remit payment.

44. Instead, in June 2025—more than eight months after NECS completed its work and issued its final invoice—MKI asserted untimely purported setoffs and backcharges against the amount owed to NECS purportedly totaling $139,017.60.

45. This amount far exceeds the few thousands of dollars in potential setoffs and backcharges that MKI had asserted while work was underway—which NECS disputes.

46. In addition, to the extent any minimal backcharges or setoffs *were* asserted while the work was ongoing, those backcharges were removed after NECS's owner, Hilario Kiendo met with Roger Micciche, who was MKI's site superintendent at the time, in early 2024.

47. Following that meeting, NECS cured the minor deficiencies, the backcharges were removed, and MKI made its first (and only) progress payment in March 2024, which did not include any deductions for setoffs or backcharges.

48. Nonetheless, and despite MKI's then-site superintendent, James Alexander signing off and approving of NECS's work following a *September 2024* final walkthrough, several months later, MKI asserted the aforementioned *June 2025* backcharges.

49. These untimely and unsupported June 2025 backcharges specifically include: (1) $19,200.00 for recleaning Buildings 1 and 5, (2) $1,248.00 for cleaning portions of the clubhouse, (3) $90,900.00 for exterior and window cleaning, and (4) $4,500.00 for machine scrubbing

concrete surfaces.

50. MKI added $11,584.80 in purported overhead and an additional $11,584.80 in purported fee or profit to those alleged costs, for a total of $139,017.60.

51. NECS disputes MKI's asserted June 2025 backcharges—all of which were apparently made-up after the fact with no opportunity to cure as required by the Subcontract.

52. The Subcontract required MKI to provide notice and an opportunity for NECS to address inadequate cleanup before MKI performed the work at NECS's expense.

53. To the extent MKI performed such additional work, it did not provide NECS with the contractually required notice and opportunity to cure as to all work and expenses included in MKI's asserted backcharges.

54. MKI's backcharges also included substantial amounts for work that NECS disputes were caused by any failure of NECS to perform its obligations under the Subcontract.

55. Despite its untimely backcharges, on June 24, 2025, MKI submitted a General Release and Final Lien Waiver that identified a payment amount of $75,639.93—which is approximately $16,000.00 less than the total amount invoiced by NECS at that time.

56. On July 21, 2025, NECS, through counsel, made a written demand for payment of $91,868.55, together with interest and other recoverable amounts.

57. On August 1, 2025, MKI rejected NECS's demand—despite previously admitting that an undisputed amount of $75,639.93 was owed at that time.

58. MKI has continued to retain the benefit of NECS's labor and services without paying NECS the outstanding amount due.

59. As a direct and proximate result of MKI's conduct, NECS has sustained tens of thousands of dollars in actual damages, and incurred attorney's fees and costs in connection with

attempting to recover the amounts owed.

**COUNT I**
**(Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing)**

60. All of the preceding Paragraphs are incorporated here as if fully set forth herein.

61. Under the Subcontract, MKI agreed to compensate NECS for properly performed work in accordance with the Subcontract's payment provisions.

62. The original Subcontract Price was $110,259.33, subject to authorized additions, deductions, changes, offsets, and other adjustments permitted by the Subcontract.

63. NECS performed its obligations under the Subcontract, or substantially performed those obligations, including by furnishing labor, equipment, supervision, and cleaning services for the Project consistent with the Subcontract.

64. NECS also performed additional, repeat, and corrective cleaning services requested or directed by MKI during the course of the Project.

65. To the extent any condition precedent applied to NECS's right to payment, NECS satisfied the condition, the condition occurred, MKI waived or prevented its occurrence, or the condition was otherwise excused.

66. MKI made a partial payment of $34,619.40 but failed to pay the remaining amounts due for NECS's work.

67. On September 13, 2024, NECS issued Invoice No. 2176 in the amount of $91,868.55 for unpaid contracted and additional cleaning services.

68. Invoice No. 2176 became due on October 13, 2024.

69. MKI failed and refused to pay the outstanding amount when due without any valid justification and its failure to pay NECS the amounts properly due under the Subcontract constitutes a material breach of the Subcontract.

70. NECS has performed all obligations required of it under the Subcontract, except for any obligations excused, waived, prevented by MKI, or rendered unnecessary by MKI's conduct.

71. As a direct and proximate result of MKI's breach, NECS has suffered damages.

72. NECS is also entitled to prejudgment interest from the date the amount became due, post-judgment interest, recoverable costs, and all other relief available under the Subcontract and applicable law.

**COUNT II**
**(Violation of the PPA, Md. Code, Real Prop. § 9-301 et seq.)**

73. All of the preceding Paragraphs are incorporated here as if fully set forth herein.

74. NECS is a subcontractor that performed work and furnished labor, materials, equipment, and services for MKI under a construction contract within the meaning of the Maryland Prompt Payment Act, Md. Code, Real Prop. § 9-301 et seq. (the "PPA").

75. MKI was a contractor within the meaning of the PPA.

76. The Subcontract and the work performed by NECS are not excluded from the PPA under Md. Code, Real Prop. § 9-305.

77. NECS performed contracted and additionally requested cleaning services for the Project and thereby became entitled to payment for its work.

78. Upon information and belief, MKI received payment from the Project owner that included payment for all of NECS's work and materials.

79. Under Md. Code, Real Prop. § 9-302(b)(3) and Paragraph 15(k) of the Subcontract, MKI was required to pay NECS all undisputed amounts owed within seven days after MKI received payment for NECS's work or materials.

80. Of the more than $91,000.00 in principal still due and owing to NECS, the vast

majority of that balance is undisputed.

81. MKI's own records and conduct reflected that NECS remained entitled to payment, including MKI's transmission on June 24, 2025, of a General Release and Final Lien Waiver identifying a payment amount of $75,639.93 (the "Undisputed Amount").

82. MKI nevertheless failed to pay NECS any portion of the Undisputed Amount within the time required by the PPA.

83. MKI instead withheld the entirety of NECS's outstanding balance based on backcharges, which were untimely, created after-the-fact, and inconsistent with the Subcontract.

84. NECS made repeated demands for payment, including a written demand dated July 21, 2025.

85. Despite those demands, MKI failed and refused to pay NECS the Undisputed Amount.

86. MKI's failure to timely pay NECS violated Md. Code, Real Prop. § 9-302.

87. MKI acted in bad faith by, among other things:

a. withholding the entirety of NECS's outstanding balance without paying the Undisputed Amount;

b. asserting backcharges after-the-fact, that were not adequately documented or substantiated;

c. including substantial overhead, profit, or fee markups in its claimed backcharges;

d. failing to establish that all alleged corrective work was within NECS's contractual scope or caused by NECS;

e. failing to comply with applicable contractual notice and cure

requirements as to all asserted backcharges; and

f. continuing to retain the benefit of NECS's labor and services without paying amounts properly due.

88. As a direct and proximate result of MKI's violation of the PPA, NECS has suffered damages in an amount to be determined through discovery and at trial.

89. Pursuant to Md. Code, Real Prop. § 9-303, NECS is entitled to interest from the date the Court determines the undisputed amounts became due, reasonable costs, equitable relief as appropriate, and reasonable attorneys' fees upon a finding that MKI acted in bad faith.

**COUNT III**
**(Promissory Estoppel—in the Alternative)**

90. All of the preceding Paragraphs are incorporated here as if fully set forth herein.

91. During the course of the Project, MKI, through its authorized employees and project personnel, clearly and definitely represented and promised that NECS would be compensated for cleaning services MKI requested NECS to perform.

92. MKI's promises included promises to compensate NECS for additional, repeat, and corrective cleaning services associated with, among other things, Building 1, Building 4, the clubhouse, and the removal of paint spray from appliances, windows, and flooring.

93. MKI made those promises under circumstances in which MKI reasonably expected that they would induce NECS to mobilize personnel, devote labor and equipment, incur costs, and perform the requested services.

94. NECS reasonably relied on MKI's promises by performing the requested cleaning services and by furnishing the labor, supervision, equipment, supplies, transportation, and other resources necessary to perform that work.

95. NECS would not have performed the additional or repeat services, or incurred the

associated labor and operating costs, without MKI's requests and promises of payment.

96. MKI knew of, directed, accepted, and retained the benefit of NECS's performance.

97. After NECS performed the requested services, MKI failed and refused to compensate NECS as promised.

98. NECS's reliance on MKI's promises was actual, reasonable, and foreseeable.

99. NECS suffered substantial detriment as a result of its reliance, including the value of unpaid labor, equipment, supplies, supervision, travel, and other costs incurred in performing the requested services.

100. Injustice can be avoided only by enforcing MKI's promises and requiring MKI to compensate NECS for the services NECS performed in reasonable reliance on those promises.

101. As a direct and proximate result of MKI's failure to honor its promises, NECS has suffered damages.

**COUNT IV**
**(Unjust Enrichment—in the Alternative)**

102. All of the preceding Paragraphs are incorporated here as if fully set forth herein.

103. NECS pleads this Count in the alternative to its breach of contract claim and only to the extent the Court determines that the Subcontract is invalid, unenforceable, inapplicable, or does not govern some or all of the additional, repeat, or corrective cleaning services performed by NECS.

104. NECS furnished substantial labor, supervision, equipment, supplies, transportation, and cleaning services for the benefit of MKI in connection with the Project.

105. NECS's services included additional, repeat, and corrective cleaning associated with Building 1, Building 4, the clubhouse, and the removal of paint spray from appliances, windows, and flooring.

106. MKI requested, directed, knew of, and accepted NECS's performance of those services.

107. NECS's performance conferred a direct and measurable benefit upon MKI by advancing the completion and turnover of the Project and by satisfying cleaning obligations that MKI otherwise would have been required to perform or obtain from another contractor.

108. MKI knew or reasonably should have known that NECS expected to be compensated for the labor, services, equipment, and resources furnished for MKI's benefit.

109. MKI made a partial payment to NECS but failed and refused to pay NECS for the remaining value of the services and benefits MKI received.

110. MKI has retained the benefit of NECS's labor and services without paying NECS the reasonable value of those benefits.

111. To the extent MKI contends that any of NECS's additional, repeat, or corrective work was outside the Subcontract or was not authorized through a contractually effective change order, MKI nevertheless requested, accepted, and benefited from that work.

112. It would be inequitable and unjust for MKI to retain the benefits of NECS's services without paying NECS their reasonable value.

113. As a direct and proximate result of MKI's unjust enrichment, NECS has suffered damages in an amount to be determined through discovery and at trial.

NECS is entitled to restitution measured by the reasonable value of the benefit conferred upon and retained by MKI, including the unpaid value of NECS's labor and services, but without duplicative recovery under NECS's other claims.

**PRAYER FOR RELIEF**

WHEREFORE, NECS respectfully requests that the Court issue Judgment in its favor and against MKI as follows:

a. Compensatory damages in the amount of the full amount remaining due and owing under the Subcontract of $91,868.55, plus pre-judgment interest at the legal rate from October 13, 2024, to the date of this filing.

b. Compensatory damages in the amount of $75,639.93 plus 1.5% interest per month from October 13, 2024 to the present under Md. Code, Real Prop. § 9-303.

c. An award of NECS's reasonable attorney's fees under Md. Code Real Prop. § 9-303(c) for MKIs' bad faith failure to pay the undisputed amounts owed.

d. NECS's costs and such other further relief as the Court deems just and appropriate.

Dated: August 26, 2026

Respectfully Submitted,

/s/ Andrew M. Williamson
Andrew M. Williamson Fed Bar. No. 18721
Partner
**Williamson Law Firm**
11810 Grand Park Avenue
Suite 500
North Bethesda, MD 20852
Direct: 301-916-1560
Email: amw@awilliamson.law
*Counsel for Plaintiff New England Cleaning Solutions, LLC*

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable in this action.

/s/ Andrew M. Williamson